Robert J. Carroll & Sons
vs. } No. 58209
United Electric Railways Co.

November 5, 1925

SUMNER, J. Plaintiff, a co-partnership, has brought suit to recover damages resulting from a collision between the hearse which one of the plaintiffs was driving and a trolley car of the defendant. The jury brought in a verdict for the plaintiff for $3000 and defendant has filed motion for a new trial.

Eugene F. Carroll, one of the co-partners, was driving the hearse from Elmwood Avenue into Locust Grove Cemetery when the trolley car collided with the hearse and struck it behind the right hand door near the front. It did not overturn the hearse but pushed it about a foot till the wheels were blocked by the curbing. The hearse weighed 4880 pounds and plaintiffs claim a considerable amount of damage was done to its right side. The occupants of the hearse were not thrown out or injured. E. F. Carroll, the driver of the hearse, testified that he had been watching the car from the time it left a white post 288 feet away; that as he came to make the straight turn into the cemetery the car was at the second pole, which is 184 feet away; that the car slackened its speed, then increased its speed; that the motorman leaned out of the window and shouted to him and the car crashed into the hearse. Plaintiffs introduce a number of witnesses in support of their claim. Their testimony varies considerably as to distances.

The principal witness for the defendant was Levesque, the motorman of the car. He testified that he approached the curve, which (according to measurements) was 48 feet distant from the driveway, at a rate of six miles an hour; that he saw the second automobile go into the cemetery but did not notice that it was a funeral; that when he was inside the curve he saw the hearse approaching the driveway and 8 or 10 feet from the track, and he applied his air-brakes; that the brakes locked the wheels, and the car skidded; that he applied sand, taking off the brakes and putting on the reverse; that he was then 20 feet away and he shouted to warn the driver of the hearse, which was then two or three feet from the rails, but was unable to stop the progress of his car and it collided with the hearse. He also says that skidding seems to increase the speed of the car and that after the accident he examined the tracks and found them slippery.

There was no evidence that the mechanism of the car was out of order and no positive testimony that the motorman did not do what he said. The conductor said that he noticed the bucking of the car when the reverse was applied and saw the motorman kicking on sand. The attorney for the plaintiffs claimed in his argument that the motorman was not looking ahead and did not notice the cortege till he was too close to it to stop.

At least five witnesses for the plaintiff testify that the car had begun to slow down and then, when it was a distance (as they variously estimate) of some 25 to 80 feet from the driveway, increased its speed. If, after leaving the white post, the speed of the car had steadily increased up to the time of the accident, then it might be a fair deduction that the motorman was not observing the highway or the crossing, but the fact that he slowed down, apparently about to stop. as one of the plaintiff's witnesses testifies, and then started up again, would seem to indicate that either something was out of order on the car or that the car did skid. One of the plaintiffs, E. F. Carroll, claims that it was a "beautiful day," but Mr. Wood, who had charge of the weather bureau in Providence, testified that the day was nine-tenths cloudy, that there was a light rain from 5:15 a. m. to 8:14 p. m., during which time .05 of an inch fell, that the humidity was 68% at 1 p. m. and increased to 92% at 9 p. m. It was on the 28th of August, in the afternoon that the accident happened; there are three trees of good size along this piece of track and not far from the driveway. Walter L. Anthony, a civil engineer, who does occasional work for the defendant, testified that when he examined the track, perhaps an hour after the accident, that the track was greasy, with burned leaves, and that he noticed sand on the rails extending back 40 feet from the entrance to the cemetery. Robert Carroll, one of the plaintiffs, and Frederick Cooper, testified that they examined the track some time after the accident and saw no sand or leaves on it, and that it did not look moist. Robert Carroll did admit that there were a few leaves there but that they were to one side.

It may be noted that Court and jury took a view of the place which was helpful. There is a curve in the track as the car approaches the crossing from the south and there are three trees along the street side of the track. For this reason it would not be strange if the motorman did not get a view of the cortege till he approached the bend. The hearse was going very slowly all this time, at a speed estimated as between two and four miles an hour. The car was going much faster till it slowed up and at a speed estimated by the plaintiffs' witnesses as from 6 to 15 miles an hour. It was in full view all the time of Eugene Carroll, the driver of the hearse. He contradicts himself in his distances. He says, "The trolley was 60 to 70 feet away when the hearse was making its turn into the cemetery, almost into the cemetery," that he had already made the turn when the car increased its speed and was then three feet from the outer curb and could have stopped almost instantly; that he blew his horn to attract the attention of the motorman when 25 or 30 feet from the entrance, and at the same time he blew his horn, almost immediately the motorman increased his speed. Another time he says the car went 30 feet from the time the motorman increased his speed till he hollered; that he was approaching to cross the rail when the car increased its speed, he being then within one foot of the outer rail. If he was 3 feet from the outer curb when the car increased its speed his automobile would have been about 6 feet from the path of the car, and if he had acted then he could have stopped his car in a safe place.

Bouchard, who was driving the first automobile, evidently scented danger, as he apparently was watching the car from the time he crossed the track until the accident. Decency requires a trolley car to give way to a funeral procession entering a cemetery and it is probable that Eugene F. Carroll had this idea in mind when he

drove in. He apparently was watching the car most of the time and could see that it was steadily approaching the crossing and going faster than he was.

Should he under those circumstances have ventured upon the track as he did?

The Court thinks that he was guilty of contributory negligence. The explanation of the motorman is reasonable and corroborated by some of the facts in the case. We can not convict him of negligence on mere surmise. E. F. Carroll and one or two other witnesses said that the motorman did nothing to stop the car. It is difficult for one outside of the car to clearly note what the motorman is doing in the vestibule. He stands behind windows with good sized partitions. The air-brake is below the window-sill, the sand-box is worked by the foot, the reverse is on a level with the sill and the handle that gives the power, alone projects above the sill and can be clearly seen if the partitions do not interfere. The motions made in putting on and taking off power may be instantaneous and unless the observer is watching at that particular time he will see nothing.

Evidently Robert Carroll surmised that the car might have skidded when he had Mr. Cooper join him in examining the tracks.

Defendant's motion for a new trial is granted.

For Plaintiffs: Cooney & Cooney and John B. Lawlor.

For Defendant: Alonzo R. Williams & Clifford Whipple.